IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROBERT HAMMERS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:19-CV-00181-JRG |
| | § | |
| CARLOS E MAYEA-CHANG, DAYCA | § | |
| TRANSPORT SERVICES, INC, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Dismiss for Improper Venue or, in the Alternative, Motion to Transfer Venue ("the Motion") filed by Defendants Carlos Mayea-Chang ("Mayea-Chang") and Dayca Transport Services ("Dayca") (collectively, "Defendants") pursuant to Fed. R. Civ. P. 12(b)(3). (Dkt. No. 3). Having considered the Motion, and for the reasons set forth herein, the Court finds the Motion should be and hereby is **DENIED**.

## I.    Factual and Procedural Background

The instant case involves an automotive collision alleged to have occurred on Interstate 20 at an unspecified location somewhere within Smith County, Texas. (Dkt. No. 1).[1] Plaintiff Robert Hammers ("Hammers") filed the Complaint on May 21, 2019, alleging various claims of negligence arising from the collision. (Dkt. No. 1). In the Complaint, Hammers alleges that venue is proper pursuant to 28 U.S.C. § 1391(b)(2). (*Id.* at 2 ¶ 4).

On April 16, 2019, Defendants filed the present Motion seeking dismissal pursuant to 28 U.S.C. § 1406(a), or, in the alternative, an intra-district transfer pursuant to 28 U.S.C. § 1404(a).

---

[1] Neither Party specifies where in Smith County the collision occurred. As described in Part III of this Order, the factual record submitted to the Court is exceptionally scant. Smith County contains 950 square miles.

With respect to both bases for transfer, Defendants do not dispute that venue is proper in the Eastern District of Texas, but instead focus primarily on whether the case should have been brought in the Tyler Division rather than the Marshall Division.

## II.     Venue Is Proper Under 28 U.S.C. § 1391

Defendants allege that venue is improper because the appropriate judicial division is the Tyler Division rather than the Marshall Division of the Eastern District of Texas. The accident which gives rise to this case occurred in the Tyler Division. (Dkt. No. 3). As noted above, Defendants appear to concede that the Eastern District of Texas is a proper judicial district. (*Id.*) However, Defendants allege that the Marshall Division is improper.

Hammers responds that "Defendants have wholly failed to state any acceptable basis" for the dismissal. (Dkt. No. 5 at 5). Specifically, Hammers argues that the Marshall Division is proper for a variety of reasons, including an uncontroverted assertion that the Marshall Division is more convenient for both Hammers and Defendants.

The Court concludes that the Marshall Division is an appropriate venue under 28 U.S.C. § 1391. This issue presents a relatively straightforward question of statutory interpretation. "The task of statutory interpretation begins and, if possible, ends with the language of the statute." *United States v. Lauderdale Cty.*, 914 F.3d 960, 964 (5th Cir. 2019). "[W]hen decoding language, judges 'must be attentive not to words standing alone but to surrounding structure and other contextual cues that illuminate meaning.'" *Weaver v. Metro. Life Ins. Co.*, 939 F.3d 618, 626 (5th Cir. 2019). "The meaning of a statutory provision 'is often clarified by the remainder of the statutory scheme . . . .'" *Ramos-Portillo v. Barr*, 919 F.3d 955, 960 (5th Cir. 2019) (quoting *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 321 (2014)). Thus, courts "ought to 'consider the entire text, in view of its structure and of the physical and logical relation of its many parts.'" *In re Lopez*,

897 F.3d 663, 670 n.5 (5th Cir. 2018) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012)).

First and foremost, the venue statute which governs this case does not distinguish between judicial ***divisions***, and instead is addressed to only judicial ***districts***. *See* 28 U.S.C. § 1391. Specifically, § 1391 provides that a "civil action may be brought in" one of the following three locations:

> (1) ***a judicial district*** in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) ***a judicial district*** in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, ***any judicial district*** in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*Id.* (emphasis added). Defendants do not dispute that this case meets the plain text of § 1391, because the Eastern District of Texas is "a judicial district in which a substantial part of the events . . . giving rise to the claim occurred." *See id.* § 1391(a)(2). Instead, Defendants seek to impose an additional requirement on the statutory text—a requirement related to judicial divisions—in an effort to compel transfer from the Marshall Division to the Tyler Division. Defendants' argument is both confused and misplaced.

For the past thirty years, the federal courts have uniformly held that because § 1391 "does not distinguish between the divisions of a judicial district, venue properly lies in any division" of an otherwise-appropriate judicial district.[2] *Griffin v. Tyson Foods, Inc.*, No. 2:16-cv-734-JRG-

---

[2] It is notable that Defendants do not cite a single case standing for the proposition that § 1391 imposes a divisional restriction. In their discussion of this argument, Defendants cite only two cases—neither of which is relevant to this case. Both cases address the 1990 amendments to §1391, which changed the statutory language from "***the*** judicial district in which a substantial part of the events or omissions giving rise to the claim occurred" to "***a*** judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *Setco Enters. v. Robbins*, 19

RSP, 2017 WL 345926, at *2 (E.D. Tex. Jan. 24, 2017); *see also, e.g.*, *Battee v. Ben E. Keith Co.*, No. 2:17-cv-00161-JRG-RSP, 2017 WL 1832043, at *1 (E.D. Tex. May 5, 2017); *McKee v. Grantham*, No. 2:16-cv-00184-RSP, 2016 WL 3567038, at *1 (E.D. Tex. July 1, 2016); *Walker v. IBEW*, No. 2:15-cv-01283-JRG-RSP, 2015 WL 5783802, at *2 (E.D. Tex. Sept. 30, 2015); *Monroe v. Walmart Stores Tex., LLC*, No. 2:11-cv-329-JRG, 2012 WL 3887006, at *2 (E.D. Tex. Sept. 6, 2012); *Johnson v. Merchant*, 628 F. Supp. 2d 695, 696–97 (N.D. Miss. 2009) ("'[I]f there is no local rule, venue need be set only on a district basis, disregarding divisions." (citing *Jordon v. Bowman Apple Prods. Co.*, 728 F. Supp. 409 (W.D. Va. 1990))); *Crumrine v. NEG Micon USA, Inc.*, 104 F. Supp. 2d 1123, 1126 (N.D. Iowa 2000) ("Furthermore, in 1988, Congress repealed the federal statute that formerly established 'divisional venue' in civil cases in federal court, 28 U.S.C. § 1393 . . . When 28 U.S.C. § 1393 was repealed . . . the concept of divisional venue disappeared." (quoting *Bishop v. C & P Trucking Co., Inc.*, 840 F. Supp. 118, 119 (N.D. Ala. 1993) (quotation marks omitted))).

The text of § 1391 only imposes restrictions on the judicial *district* in which a case may be filed; it does not impose any restriction on the *division* within such district where a case may be filed. *See Griffin*, 2017 WL 345926, at *2. The statute which previously imposed a divisional venue requirement, 28 U.S.C. § 1393, was repealed more than thirty years ago in 1988. Thus, under § 1391, a division is only improper when it falls within an improper judicial district. *Id.*

---

F.3d 1278, 1281 (8th Cir. 1994); *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998). Both cases concluded that the statutory amendment **broadened** the number of venues which were appropriate under § 1391. *Setco*, 19 F.3d at 1281 ("Under the amended statute, we no longer ask which district among two or more potential forums is the 'best' venue . . . Rather, we ask whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts."); *see also Bramlet*, 141 F.3d at 263 (same) (citing *Setco*, 19 F.3d at 1281). Neither case addresses whether § 1391 imposes a divisional restriction in addition to a district-based venue analysis. In fact, the Court is aware of no case that has embraced Defendants' theory that § 1391 imposes a divisional requirement. The Court believes Defendants have confused and somehow mixed together the very different concepts of **proper** venue and **convenient** venue.

Conversely, § 1391 permits a civil action to be filed in any division, so long as the division is within a proper judicial district. *Id.*

Defendants' interpretation to the contrary is improper because it would require engrafting a new divisional requirement onto the text of § 1391. *Cf. Weaver*, 939 F.3d at 626 ("[W]e decline to engraft what [Congress] declined to enact."). In enacting § 1391, Congress only chose to impose a district-based venue requirement, not a divisional requirement. *See* 28 U.S.C. § 1391. "[O]ur constitutional structure does not permit this Court to 'rewrite the statute that Congress has enacted.'" *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1949 (2016) (quoting *Dodd v. United States*, 545 U.S. 353, 359 (2005)); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 528 (2019) (explaining that courts may not "rewrite" a statute for any reason, even when there may be substantial policy justifications for doing so).[3]

The Court's interpretation of the plain text of § 1391 is reinforced by the surrounding statutory provisions, which demonstrate that Congress understood how to include a divisional restriction on venue when it wished to do so. *See Ramos-Portillo*, 919 F.3d at 960 (instructing courts to look at surrounding provisions). In order to address a "change of venue" based on litigation convenience, Congress enacted a separate and distinct statute, 28 U.S.C. § 1404, which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other ***district or division*** where it might have been brought or to any district or division to which all parties have consented.

---

[3] Section 1406 *does* distinguish between the relevant district and division, but such distinction is immaterial to the present analysis. By its own terms, § 1406 is a procedural statute addressed to how courts should proceed ***after*** venue is determined to be "wrong," and instructs the Court to either dismiss or transfer the case. *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue *in the wrong division or district* shall dismiss, or . . . transfer such case . . . .") (emphasis added). However, § 1406 is not directed to the antecedent question of when venue is improper. *See id.* That antecedent question is independently governed by a substantive venue statute, which is either the general venue statute, 28 U.S.C. § 1391, or a subject-matter specific statute. *See, e.g.*, 28 U.S.C. § 1400 (addressing venue in patent and copyright infringement actions). Since the substantive venue statute at issue in this case—§ 1391—provides no basis to conclude that the Marshall Division is "wrong," § 1406 does not support transfer or dismissal.

28 U.S.C. § 1404(a) (emphasis added). By expressly distinguishing between transfer to another "district *or division*," Congress designed § 1404 to "apply as much to transfers between divisions of the same district as to transfers from one district to another." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (emphasis added). Similarly, Congress has previously enacted a venue statute imposing precisely this divisional requirement—28 U.S.C. § 1393—which has since been repealed. *See* Judicial Improvements and Access to Justice Act, Pub. L. No. 100-702, § 1001, 102 Stat 4642 (1988). In contrast to these surrounding provisions, a distinction between divisions and districts is conspicuously absent from § 1391.

The presence of a divisional distinction in § 1404 and § 1393 is no less important than the absence of a divisional distinction in § 1391. *See Ramos-Portillo*, 919 F.3d at 960; *In re Lopez*, 897 F.3d at 670 n.5. "Congress has included" a divisional restriction in § 1404 and § 1393, closely-related venue provisions, "clearly demonstrating that it knows how to impose such a requirement when it wishes to do so." *Whitfield v. United States*, 543 U.S. 209, 216–17 (2005). "Where Congress has chosen not to do so, we will not override that choice . . . ." *Id.* Since Congress has chosen not to include a division-based restriction on venue in § 1391, this Court will not "engraft what [Congress] declined to enact." *See Weaver*, 939 F.3d at 626. Doing so would actually require the Court to engraft what Congress has already *repealed*. *See* 28 U.S.C. § 1393. Clearly, § 1391 does not impose a division-based restriction. Accordingly, the Court concludes that venue is proper in this division because it is part of this district, and all Parties agree that venue is proper in this district.

### III.    Transfer for Convenience Is Not Appropriate

As an alternative basis for relief, Defendants contend that the Court should transfer the case pursuant to 28 U.S.C. § 1404(a), which provides that the court may transfer a case based on "the

convenience of parties and witnesses" to "any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

The threshold inquiry when analyzing transfer under § 1404(a) is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*].[4]

Once this initial threshold has been met, courts determine whether the case should be transferred by analyzing various public and private factors. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are to be decided based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) [hereinafter *Volkswagen II*].

To prevail on a motion to transfer under § 1404(a), the movant must show that transfer is "clearly more convenient" than the venue chosen by the plaintiff. *Id.* at 315. Absent such a

---

[4] The Parties do not dispute this threshold inquiry.

7

showing, plaintiff's choice of venue must be respected. *Id.* When deciding a motion to transfer under § 1404(a), the court may consider undisputed facts outside of the pleadings, such as affidavits or declarations, but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party. *See Sleepy Lagoon, Ltd., v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300, 1306 (N.D. Okla. 2011); *see also Cooper v. Farmers New Century Ins. Co.*, 593 F. Supp. 2d 14, 18–19 (D.D.C. 2008); *Reilly v. Meffe*, 6 F. Supp. 3d 760, 765 (S.D. Ohio 2014) ("In resolving venue questions, courts 'may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff.'" (quoting *Audi AG & Volkswagen of Am. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002))); 5B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 1352 (3d ed. 2013) ("A district court may examine facts outside the complaint to determine whether its venue is proper. And . . . the court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff."); *accord Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 492–93 (5th Cir. 2018) ("Venue issues are generally reviewed for abuse of discretion. . . . '[V]iew[ing] all the facts in a light most favorable to the plaintiff,' *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237 (5th Cir. 2009), 'the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments.' *Id.* at 238.") (alterations in original). Because the question of convenience is intensely fact-bound, "[t]here can be no question . . . that the district courts have 'broad discretion in deciding whether to order a transfer.'" *Volkswagen II*, 545 F.3d at 311.

## A. Defendants Have Failed to Adequately Brief This Issue

As an initial matter, the Court notes that the briefing from both sides on this issue is exceptionally sparse. The briefing fails to specify critical factual information that is necessary to

decide the issues presented by the instant Motion. For example, neither the briefing nor the complaint identify where the auto-accident specifically occurred;[5] where Hammers received medical treatment;[6] from whom Hammers received medical treatment (let alone where such medical professionals are located); and which witnesses, other than the Parties, who will testify at trial.

Based on the failure to address the relevant facts, the Court finds that Defendants have substantively failed to carry their burden to demonstrate that transfer to the Tyler Division is "clearly more convenient." *Volkswagen II*, 545 F.3d at 315. Though both Parties fail to discuss many of the operative facts relevant to this Motion, it is the movant who "is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Diaz v. Kaplan Higher Educ., L.L.C.*, 820 F.3d 172, 176 (5th Cir. 2016). This is because the movant bears the burden to show a sufficient justification to override the plaintiff's choice of venue. *Volkswagen II*, 545 F.3d at 315. When the movant fails to provide the factual foundation that is necessary to evaluate the relative convenience of the present and proposed venues, the Court lacks a basis to conclude that the proposed venue is "clearly more convenient" than the present venue. *Id.* Put another way, if the facts governing convenience are not clearly set forth, the Court cannot conclude that the proposed venue is "clearly more convenient." *Id.* Any such unsupported request to transfer to such proposed venue must be denied. *Id.*

---

[5] The briefing from the Parties generally reference the accident as occurring "on Interstate 20" and as falling "within Smith County." Interstate 20 spans the entire 950 square miles of Smith County, running more or less east and west, between its eastern border within Gregg County and its western boundary within Van Zandt County. The Parties' failure to specify the location of the accident is material to the Court's analysis, because there are locations on Interstate 20 in Smith County which are approximately equidistant from the Marshall Federal Courthouse and the Tyler Federal Courthouse, as well as locations which are plainly closer to the Tyler Courthouse. Without knowing more, the Court has no basis to determine whether transfer would result in any actual gain in convenience, or how heavily such gains weigh relative to other factors. *See In re Apple Inc.*, 743 F.3d 1377 (Fed. Cir. 2014).

[6] The specific location where Hammers received medical treatment is completely undiscussed by the Parties. Defendants broadly represent that "***upon information and belief*** most, if not all, of Plaintiffs' [sic] medical care has occurred in ***Smith County, Texas***." (Dkt. No. 3 at 2) (emphasis added).

The Federal Circuit, applying Fifth Circuit law, has recognized that courts may deny a request for transfer when the party seeking transfer fails to provide specific factual information which is necessary to evaluate the potential convenience gained by transfer. *In re Apple Inc.*, 743 F.3d 1377 (Fed. Cir. 2014). In *Apple*:

> The district court examined the private and public interest factors but was stymied in its analysis by Apple's lack of evidence. Specifically, the court noted that it was unable to evaluate the convenience of witnesses in its transfer analysis ***because of Apple's failure to identify willing witnesses*** who would need to travel to the Eastern District of Texas ***or any third party witnesses not subject to the compulsory process*** of that court. Similarly, ***in light of "Apple's vague assertions and unknown relevance and location of potential sources***," ***the district court was unable to weigh the relative ease of access to sources of proof factor in its transfer analysis***, because "the weighing of this factor would be merely speculative."

*Id.* at 1378–79 (emphasis added). After the district court denied Apple's motion to transfer, Apple appealed, arguing that the court abused its discretion by refusing to transfer the case. *Id.* at 1377. The Federal Circuit rejected that contention:

> Nothing suggests the district court conducted an improper transfer analysis. ***The district court simply determined that the evidence before the court was so general in nature that the court was unable to evaluate its relevance in the transfer analysis***. ***Based on the sparse, and general, record before the district court, we cannot say "that the facts and circumstances are without any basis for a judgment of discretion."*** *Volkswagen,* 545 F.3d at 317 n. 7. Accordingly, we will not overturn the court's conclusion that Apple failed to submit sufficient evidence to suggest that transfer was appropriate.

*Id.* at 1379 (emphasis added). In so deciding, the majority rejected a dissenting argument that Apple had provided sufficient factual predicate for transfer by identifying the number of Apple employees who lived in the transferee venue. "We decline to find that the district court was 'patently erroneous' based only on inferences drawn from the number of employees at Apple's headquarters, which only reflects the parties' relative size ***and not necessarily the location of potential witnesses—particularly as Apple has not shown that it did not have more granular facts at its disposal to support its original motion***." *Id.* at 1379 n.3 (emphasis added); *accord Diem*

*LLC v. BigCommerce, Inc.*, No. 6:17-cv-00186-JRG, 2017 WL 6729907, at *2 (E.D. Tex. Dec. 28, 2017) ("[A] failure to identify . . .with specificity . . . the documents and the location of the documents is a failure of the moving party to meet its burden on transfer."). For each of the convenience factors, Defendants have either provided generalized, high-level descriptions of the relevant facts which bear on convenience, or have failed to discuss such facts at all. In the following Section, the Court will examine the specific failure to address the relevant facts with respect to each convenience factor.

**B.  The Tyler Division Is Not Clearly More Convenient Than The Marshall Division**

The limited evidence which Defendants have proffered fails to show that transfer to the Tyler Division would be "clearly more convenient," in view of the following public and private interest factors.

*1.  Private Interest Factors*

a)  Relative Ease of Access to Sources of Proof

When considering the relative ease of access to sources of proof, courts consider the location of documents and physical evidence. *Volkswagen II*, 545 F.3d at 316. "Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be a private interest factor to be considered." *Implicit, LLC v. Trend Micro, Inc.*, No. 6:16-cv-00080-JRG, 2016 WL 9245067, at *2 (E.D. Tex. Sept. 1, 2016) (citing *Volkswagen II*, 545 F.3d at 316). However, transporting documents which are stored in an electronic format, rather than a physical format, is a "lesser inconvenience," because electronic transportation of documents is far less difficult than physical transportation. *Volkswagen II*, 545 F.3d at 316; *Crenshaw Enters., Ltd. v. Irabel, Inc.*, No. 1:17-cv-322, 2018 WL 6185991, at *7 (E.D. Tex. Jan. 18, 2018), *reconsideration denied*, No. 1:17- cv -322, 2018 WL 6220060 (E.D.

Tex. Feb. 15, 2018) ("If the evidence is stored electronically, however, it can just as easily be accessed in San Antonio as in Beaumont.").

The movant bears the burden to show that transfer will result in more convenient access to specifically-identified and material sources of proof. *See Diem*, 2017 WL 6729907, at *2. A movant fails to meet that burden when it merely offers generalized statements that do not specify the format, relevance, or identity of particular documents or physical evidence. *Invitrogen Corp. v. Gen. Elec. Co.*, No. 6:08-cv-113, 2009 WL 331889, at *2 (E.D. Tex. Feb. 9, 2009) ("[G]eneral statements fail to show that transfer would make access to sources of proof either more or less convenient for the parties."); *MacroSolve, Inc. v. GEICO Ins. Agency, Inc.*, No. 6:12-cv-00074-MHS-JDL, 2013 WL 12147664, at *3 (E.D. Tex. July 16, 2013) ("While MacroSolve indicates that it possesses 300,000 documents in Tulsa, it fails to specify how any of the documents may be relevant to the litigation. The Court declines to speculate as to their relevance and materiality and therefore the location of these documents will be discounted."). Thus, "[t]o meet its burden under this factor, a 'movant must identify sources of proof with enough specificity that a court can determine whether transfer will increase the convenience of the parties.'" *MacroPoint, LLC v. Ruiz Food Prod., Inc.*, No. 6:16-cv-01133-RWS-KNM, 2017 WL 3722053, at *2 (E.D. Tex. Aug. 29, 2017) (quoting *J2 Glob. Commc'ns, Inc. v. Proctus IP Solutions, Inc.*, No. 6:08-cv-211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009)); *Invitrogen*, 2009 WL 331889, at *2 ("[O]ther than generally referring to documents, [the defendants] have not identified any specific evidence, physical or otherwise.").

The movant must also show that the sources of proof which it identifies are specifically relevant to trial. *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-cv-00513-JRG, 2018 WL 2329752, at *3 (E.D. Tex. May 23, 2018). "[T]he inquiry regarding access to sources of

proof correlates to production and presentation to the jury ***at trial***." *Id.* (citing *Volkswagen II*, 545 F.3d at 316; *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183–84 (1979) ("In most instances, the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or *inconvenient place of trial*.") (emphasis in original)); *see also Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, No. 2:17-cv-00577-JRG, 2018 WL 4175934, at *2 n.1 (E.D. Tex. June 29, 2018) ("[V]enue analysis is concerned only with the presentation of evidence at and during trial, not, as IV appears to argue, related to the pre-trial discovery process."). Since the inquiry is only focused on evidence that will be used at trial, a movant fails to meet its burden if it does not explain how a particular source of proof will be used at trial. *See AGIS*, 2018 WL 2329752, at *3 (citing *Leroy*, 443 U.S. at 183–84); *Intellectual Ventures I* , 2018 WL 4175934, at *2 n.1.

Finally, Courts should only consider sources of proof that are not substantially cumulative to other evidence or testimony that will be presented at trial. *See AGIS*, 2018 WL 2329752, at *3. There are multiple ways in which the same evidence may be presented, such as expert testimony, deposition designations, live witness testimony, or any other method of presenting proof. *See, e.g., Fair v. Allen*, 669 F.3d 601, 607 (5th Cir. 2012) (affirming admission testimony by an expert which summarized a study on relevant medical procedures); *Bryan v. John Bean Div. of FMC Corp.*, 566 F.2d 541, 545 (5th Cir. 1978) ("The modern view in evidence law recognizes that experts often rely on facts and data supplied by third parties.") (citing Fed. R. Evid. 705); *Allstate Ins. Co. v. Plambeck*, 66 F. Supp. 3d 782, 787 (N.D. Tex. 2014) (recognizing that some depositions are taken "merely for discovery" while other depositions are taken "for trial preparation") (citing *Marmillion v. Am. Int'l Ins. Co.*, 381 F. App'x 421, 428 (5th Cir. 2010)). Thus, a party may reasonably choose to rely on a witness, such as an expert, to synthesize documentary evidence in order to streamline

the presentation of information, in lieu of presenting potentially voluminous underlying documentary evidence to the jury. *See Polythane Sys., Inc. v. Marina Ventures Int'l*, Ltd., 993 F.2d 1201, 1207 (5th Cir. 1993) (recognizing that experts may synthesize documentary evidence but cautioning that reliance by an expert does not automatically make the underlying documents admissible). When a party intends to submit testimony in lieu of submitting documentary evidence, the import of access to the underlying documents shrinks in proportion to the documents' diminished role at trial. *See AGIS*, 2018 WL 2329752, at *3 (citing *Leroy*, 443 U.S. at 183–84); *Intellectual Ventures I* , 2018 WL 4175934, at *2 n.1. Thus, for example, documents which form the underlying basis of an expert's opinion but which will not be presented at trial are irrelevant to the convenience inquiry because they need not be transported to trial.[7] *See id.*; *AGIS*, 2018 WL 2329752, at *3 (citing *Leroy*, 443 U.S. at 183–84).

In view of the diverse plurality of options for presenting evidence, courts should not presume that parties will choose the most inconvenient or costly option. Indeed, since courts must draw all reasonable inferences in favor of the non-moving party, a movant's failure to identify a unique role at trial for a given source of proof will render this factor neutral. *See Sleepy Lagoon*, 809 F. Supp. 2d at 1306; *Cooper*, 593 F. Supp. 2d at 18–19. Thus, to meet its burden on this factor, a movant must identify a unique role at trial for proof located in other venues, in order to demonstrate that such proof must actually be transported for trial.[8]

In sum, a movant must make three showings in order to tip this factor in favor of transfer. First, the movant must indicate with particularity the identity and format of the sources of proof. Second, the movant must explain the role of such proof at trial. Third, the movant must show that

---

[7] Similarly, witnesses whose testimony will be presented via deposition are irrelevant to the convenience inquiry because such witnesses will not attend the trial. *See AGIS*, 2018 WL 2329752, at *3 (citing *Leroy*, 443 U.S. at 183–84); *Intellectual Ventures I* , 2018 WL 4175934, at *2 n.1.
[8] In this case, Defendants offer *no* explanation for the uniqueness of the evidence located in the Tyler Division.

the sources of proof are substantially noncumulative of other evidence which will be presented at trial. With these principles in mind, the Court turns to the factual allegations with respect to this factor.

Defendants' entire argument with respect to this factor is the following two sentences in their Motion:

> "First, the 'relative ease of access to sources of proof' favors the Tyler Division, since Tyler is much closer to the sources of proof than Marshall, as Tyler is where all sources of proof are located. The Court of Appeals in *Radmax* emphasized that "the question is relative ease of access, not absolute ease of access," and determined that the difference, though slight, "weighs in favor of transfer."

(Dkt. No. 3 at 8). In an earlier factual recitation, Defendants indicate that "[t]he accident which forms the basis of this lawsuit occurred in Smith County, Texas, which is located within the Tyler Division," and suggested that "[a]ll first responders are located in Smith County, Texas." (*Id.* at 7).

Hammers responds that Defendants set forth no evidence to support their claims. Specifically, Defendants cite no evidence that *any* emergency medical first responders are located in Smith County, and make no allegation that the location of the car accident is relevant as a source of proof at trial.[9] Defendants do not argue, for example, that visiting the crash site will be relevant at trial. Similarly, Defendants do not state that they intend to call any first responders as witnesses at trial. Defendants also do not explain what testimony they anticipate from such emergency medical first responders, or why that testimony would be noncumulative of other evidence at trial.

In this case, Defendants have objectively failed to carry their burden on this factor in at least three respects. First, Defendants have failed to identify *any* specific sources of proof. Defendants' Motion to Dismiss is silent on the type of documents, the format of their storage (e.g.

---

[9] The location of the car accident is clearly relevant to the public interest factor related to local interests, and may be a proxy for the location of other sources of proof if, for example, Defendants alleged that the wrecked automobile was towed nearby. However, Defendants make no such allegation, and do not otherwise explain why the largely-unspecified location of the automobile collision, standing alone, is relevant as a "source of proof."

electronic or physical), or their current location. In fact, Defendants do not identify a single document or piece of physical evidence in their Motion. Instead, Defendants generically allege that "all sources of proof are located in the Tyler Division." (Dkt. No. 3 at 8).[10] That "general statement" is grossly insufficient to allow the Court to "determine whether transfer will increase the convenience of the parties." *See U.S. Ethernet Innovations, LLC v. Ricoh Am. Corp.*, No. 6:12-cv-235-MHS-JDL, 2013 WL 12141402, at *2 (E.D. Tex. Mar. 21, 2013) (citing *J2 Global Commc'ns, Inc. v. Proctus IP Solutions, Inc.*, No. 6:08-cv-211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009)) ("Ricoh must identify its sources of proof with some specificity such that the Court may determine whether transfer will increase the convenience of the parties."). Without specifically explaining what the sources of proof are, how they are stored, or where they are actually located, the Court lacks a basis to fairly conclude that transfer would increase the convenience of accessing any sources of proof. *See In re Apple*, 743 F.3d at 1379.

Defendants' passing references to emergency medical first responders are similarly insufficient. As an initial matter, "[a]lthough witnesses are 'sources of proof' in a sense, the Court

---

[10] For the first time in their reply brief, Defendants note that "[o]ne of Plaintiff's [medical] providers is East Texas Spine Institute, located in Tyler, Texas" and suggest that source of proof justifies transfer. (Dkt. No. 6 at 2). As an initial matter, the Court finds that this argument is waived. "It is black-letter law that arguments raised for the first time in a reply brief are waived 'as a matter of litigation fairness and procedure.'" *Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*, No. 2:17-cv-00662-JRG-RSP, 2019 WL 2959568, at *3 (E.D. Tex. Apr. 18, 2019), *report and recommendation adopted*, No. 2:17-cv-00661-JRG-RSP, 2019 WL 1987204 (E.D. Tex. May 6, 2019) (citing *AAR, Inc. v. Nunez*, 408 F. App'x 828, 830 (5th Cir. 2011); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994)). Providing a new justification for a previously-articulated argument is unfair, because "Defendants could have also added the . . . argument to their initial brief, and made the tactical choice not to do so." *Id.* Defendants suggest no reason why they could not have been more specific in their initial Motion, and the Court finds none. However, even if the Court were to consider this argument, it would not change the Court's conclusion, because neither Party alleges that documents or employees of the East Texas Spine Institute ("ETSI") will be presented at trial. Defendants' entire discussion of ETSI is the following single sentence: "One of Plaintiff's providers is East Texas Spine Institute, located in Tyler, Texas." (*Id.*) Particularly because Defendants acknowledge that ETSI is only "[o]ne of Plaintiff's providers," the Court has no way to know whether ETSI has information that the Parties expect to present at trial. As was the case in *In re Apple*, the Court would be forced to speculate in order to weigh this factor. 743 F.3d at 1379. Given the absence of any analysis or discussion of the evidence maintained by ETSI, or the role of such evidence at trial, Defendants have not carried their burden in this respect. *See U.S. Ethernet Innovations, LLC v. Ricoh Am. Corp.*, No. 6:12-cv-235 MHS-JDL, 2013 WL 12141402, at *3 (E.D. Tex. Mar. 21, 2013) ("Given Ricoh's vague assertions, the weighing of this factor would be merely speculative.").

analyzes the various arguments made regarding witnesses under the factors that focus on the availability of compulsory process and/or the cost of attendance for willing witnesses." *Oyster Optics, LLC v. Coriant Am. Inc.*, No. 2:16-cv-1302, 2017 WL 4225202, at *5 (E.D. Tex. Sept. 22, 2017). Further, Defendants do not cite any evidence identifying any first responders or explaining where such first responders reside. *See Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:17-cv-00170-RWS, 2018 WL 1242050, at *4 (E.D. Tex. Mar. 9, 2018) ("[T]he parties have listed witnesses in and around each forum without stating the importance of their testimony or providing a good faith basis that they intend to call them at trial . . . Thus, the Court has difficulty placing stock into the attorney assertions in the briefing . . . ."). While Defendants generally cite to a police report documenting the car accident, that report does not mention first responders, let alone suggest that they reside in Smith County. *See Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000) (explaining that movants seeking transfer must identify both the location of witnesses and their significance for trial); *ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at *3 (W.D. Tex. Mar. 23, 2010) ("Because Defendant has only made a general allegation that certain necessary witnesses are located in the San Antonio Division, the Motion to Transfer should be denied."); *Continental Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1396 (S.D. Tex. 1992) ("Where, as here, the moving party has merely made a general allegation that certain witnesses are necessary, without identifying them or the substance of their testimony, the motion must be denied"); 15 Wright, Miller, & Cooper, *supra*, § 3851 ("If the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, without identifying them and providing sufficient information to permit the district court to determine what and how important their testimony will be, the application for transferring the case should be denied."). Finally, Hammers disputes the claim that

any relevant first responders live in Smith County, and the Court "must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Sleepy Lagoon*, 809 F. Supp. 2d at 1306; *Cooper*, 593 F. Supp. 2d at 18–19. Accordingly, Defendants have failed to adequately identify any sources of proof which may be more conveniently accessed in the Tyler Division.

Second, Defendants do not allege that there is a trial-specific need for any sources of proof that may be located in the Tyler Division. As noted above, the Supreme Court has explained that "the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient *place of trial*." *Leroy*, 443 U.S. at 183–84. The Fifth Circuit has echoed that language, and district courts have widely adopted the principle of focusing on convenience at trial. *See, e.g.*, *Volkswagen II*, 545 F.3d at 313 (focusing on the location for the "trial of the case"); *In re Radmax*, 720 F.3d at 288 (comparing the convenience of "an existing venue *for trial* of a matter and a proposed venue"). The movant must articulate both whether a source of proof will be presented, and the materiality of the role it will play, in order to give the Court a basis to appropriately consider the weight of this factor. *Cypress Lake Software, Inc. v. HP Inc.*, No. 6:17-cv-00462-RWS, 2018 WL 4100767, at *4 (E.D. Tex. June 27, 2018) (finding this factor neutral when movant failed to identify whether witnesses "would actually be called to testify and the importance and relevance of their testimony"). "[C]ourts have uniformly refused to let applications for transfer become a 'battle of numbers.'" *Mohamed*, 90 F. Supp. 2d at 775 (quoting 15 Wright, Miller, & Cooper, *supra*, § 3851). "[T]he convenience of one key witness may outweigh the convenience of numerous less important witnesses.' *Id.* at 775 n.19 (citing *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993); *Young v. Armstrong World Indus., Inc.*, 601 F. Supp. 399, 401–02 (N.D. Tex. 1984)). "Hence, the need for litigants seeking transfer

to specifically identify key witnesses and outline the substance of their testimony. . . . Just as an appellate court cannot ascertain the exercise of this Court's discretion without a written opinion, so this Court cannot exercise that discretion to ascertain the balance of the parties' convenience factors without *specific* references to witnesses and their testimony." *Id.* (emphasis in original). Here, Defendants have not expressed an intent to rely on specific documentary or physical evidence located in the Tyler Division at trial. Defendants similarly do not express an intent to call any first responders as witnesses at trial. Nor do Defendants "outline the substance of their testimony" for this Court to consider. *See id.* Thus, Defendants have failed to identify a role at trial for any sources of proof in the Tyler Division.

Third, Defendants fail to identify a noncumulative role for any sources of proof which are purportedly located in Tyler. As noted above, Defendants have failed to identify **any** role at trial for specific sources of proof. It follows that Defendants have also not identified a **unique** role at trial for such proof. For example, Defendants could elect to synthesize any documentary evidence that is located in Tyler through an expert witness. Defendants could also elect not to call an expert witness. Defendants could call emergency medical first responders live, by deposition, or not at all. Defendants could take none of these actions, and instead rely only on party-witness testimony. Defendants do not discuss these issues in the briefing. Given the absence of such discussion, the Court has no basis to determine how Defendants intend to present proof at trial (and what proof Defendants intend to present). Accordingly, Defendants have failed to identify the unique benefit of access to sources of proof which Defendants claim are present in the Tyler Division.

Since Defendants have not identified *any* specific sources of proof in the Tyler Division— let alone an intent to rely on specific and unique proof at trial—Defendants have failed to carry their burden on this factor. Accordingly, the Court finds that this factor is neutral.

b) <u>The Availability of Compulsory Process</u>

This factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance must be secured by a court order. *Volkswagen II*, 545 F.3d at 316. The Parties agree that "all of the likely witnesses, other than Defendants, in this action reside within the subpoena power of both Courts" (Dkt. No. 3 at 8); (Dkt. No. 5 at 4) ("All witnesses reside within the subpoena power of both Courts."). Accordingly, the Court finds that this factor is neutral. *See In re Radmax*, 720 F.3d at 288 ("[T]he district court correctly noted that '[a]ll of the likely witnesses in this case are within the subpoena power of either court.' It thus correctly concluded that 'this factor is neutral.'").

c) <u>Cost of Attendance for Willing Witnesses</u>

In analyzing this factor, the Court considers the convenience of all parties and witnesses. *Volkswagen I*, 371 F.3d at 204. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)) (applying Fifth Circuit law). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317. However, because "the question is relative ease of access, not absolute ease of access," courts must still consider the convenience of witnesses even when the distance between the present venue and proposed venue is less than one-hundred miles. *In re Radmax*, 720 F.3d at 288.

Defendants argue that the Tyler Division is more convenient for both the Parties and "all of the likely witnesses." (Dkt. No. 3 at 8). Defendants note that Hammers is a resident of Rusk

County, which falls within the Tyler Division, and that "Defendants' ease of travel is furthered by a transfer to Tyler as commercial airline service is available in Tyler." (*Id.* at 9). However, Defendants do not discuss where Hammers lives in Rusk County, the identity of witnesses who are likely to testify, the substance of such witnesses' testimony, or the actual distance between Defendants' domicile in Florida and either federal courthouse.

Hammers responds by specifically identifying how the Marshall Division is more convenient for all specifically identified witnesses. First, as with the discussion of sources of proof, Hammers notes that "Defendants have set forth no evidence to support any claim that it would be more expensive for any of the witnesses to attend trial at the Marshall Division as opposed to the Tyler Division," given that Defendants have neither enumerated specific witnesses nor discussed the costs of travel to either courthouse. (Dkt. No. 5 at 4). Instead, Defendants again rest on generic statements about convenience. Similarly, Hammers points out that while he lives in Rusk County, the Marshall Federal Courthouse "is closer to the domicile of both the Plaintiff and Defendant than the Tyler Division." (*Id.* at 4). Specifically, Hammers attaches screenshots from Google Maps which reflect that "it is 42 minute drive for Plaintiff to reach the Federal Courthouse in Marshall as opposed to a 45 minute drive to reach the Federal Courthouse in Tyler, Texas." (*Id.* at 4, 10, 11). Hammers also points out that the Marshall Federal Courthouse is closer to the Florida domicile of both Defendants, whether measured by flight or by car, and less expensive as well. (*Id.* at 4, 8, 9). Finally, Hammers points out that Marshall is much closer to "a large commercial airport hub in Shreveport, Louisiana." (*Id.* at 4).

The Court finds that the Marshall Division is more convenient for Hammers. The screenshots submitted by Hammers are uncontroverted by Defendants, who neither discuss nor dispute Hammers' assertion that it would be easier for Hammers to reach the Marshall Federal

Courthouse than the Tyler Federal Courthouse. (*See id.* at 4, 10, 11). Though roughly similar in terms of time and distance, Hammers presents uncontroverted evidence that travel to the Marshall Federal Courthouse will take slightly less time than travel to the Tyler Federal Courthouse. (*Id.*) Thus, the Tyler Federal Courthouse is somewhat more inconvenient for Hammers than the Marshall Federal Courthouse. *See In re Radmax*, 720 F.3d at 288 ("Any such inconvenience may well be slight, but, as we clarified in *Volkswagen II*, the question is relative ease of access, not absolute ease of access.").

The Court also finds that the Marshall Federal Courthouse is more convenient for Defendants. Defendants do not dispute that the Marshall Federal Courthouse is closer—whether measured by air travel or automotive travel—and that travel to the Marshall Federal Courthouse is relatively less expensive than travel to the Tyler Federal Courthouse. While Defendants do suggest that direct regional airline service into the Tyler Division provides added convenience, Hammers argues that such convenience is outweighed by the fact that Shreveport is "a large commercial airport hub" which may offer more frequent flights. (Dkt. No. 5 at 4). Since the Court must resolve all factual disputes in favor of the non-movant, the Court concludes that the additional convenience of the Shreveport airport outweighs the convenience added by the regional airline service directly to the Tyler Division. *See Sleepy Lagoon*, 809 F. Supp. 2d at 1306; *Cooper*, 593 F. Supp. 2d at 18–19.

Finally, in the discussion of sources of proof, the Court has already addressed Defendants' contentions related to emergency medical first responders, which Defendants repeat under the analysis of this factor as well. *See AGIS*, 2018 WL 2721826, at *5 ("These factors do not permit a single source of proof or witness to be 'double counted' or unduly influence the analysis." (quoting *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-cv-00513-JRG, 2018 WL

2329752, at *3 (E.D. Tex. May 23, 2018))). As described above, Defendants do not identify any first responders with a sufficient degree of particularity (e.g., who they are or where they reside); Defendants do not explain what testimony, if any, would be provided by such first responders at trial; and Defendants do not show that such testimony would be noncumulative of other evidence at trial (e.g., expert testimony addressed to injuries; testimony from care providers from whom Hammers has sought emergency care; testimony from care providers from whom Hammers has sought subsequent non-emergency care; or documentary evidence to the forgoing effects). All three showings are required, and none have been made.

Accordingly, the Court finds that the Marshall Division is more convenient for both Defendants as well as Hammers. Thus, this factor weighs against transfer.

d) <u>Other Practical Problems</u>

"Practical problems include those that are rationally based on judicial economy." *Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-cv-00123-JRG, 2019 WL 6345191, at *6 (E.D. Tex. Nov. 27, 2019). Courts generally do not consider delays that would result from transfer "in every case," such as the administrative delay resulting from literal transfer of case files. *In re Radmax*, 720 F.3d at 289. However, when a movant delays in seeking transfer, and the court takes action in the case, such delay and judicial expenditure of resources may weigh against transfer. *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-cv-00456-JRG, 2018 WL 4620636, at *6 (E.D. Tex. May 22, 2018). Such delays are necessarily specific to an individual movant and do not apply "in every case." *In re Radmax*, 720 F.3d at 289.

Since § 1404 instructs courts to independently consider "the interest of justice," a defendant's delay in bringing a motion to transfer for convenience weighs substantially against transfer. *Summit 6 LLC v. HTC Corp.*, No. 7:14-cv-0014-O, 2014 WL 4449821, at *11 (N.D. Tex.

Sept. 10, 2014) ("In certain circumstances, however, the Federal Circuit has found that '[c]onsideration of interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.'" (quoting *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997))); Wright, Miller, & Cooper, *supra*, § 3854 (suggesting that "the interests of justice may be decisive in ruling on a transfer motion even though the convenience of parties and witnesses point in a different direction")

The Parties agree that this factor is "neutral" because it is "not at issue here." (Dkt. No. 3 at 10).

2. *Public Interest Factors*

a) Administrative Difficulties Flowing from Court Congestion

This factor is concerned with the "speed with which a case can come to trial and be resolved." *Godo Kaisha*, 2017 WL 750290, at *9. The Parties agree that this factor is "neutral" because it is "not at issue here." (Dkt. No. 3 at 10).

b) Local Interest in Having Localized Interests Decided at Home

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206. Local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318.

In this case, Defendants argue that the Tyler Division has a localized interest relative to the Marshall Division because the automobile accident occurred within the Tyler Division, and because Hammers is a resident of Rusk County, which also falls within the Tyler Division. Hammers does not dispute Defendants' argument.

24

The Court agrees with Defendants, and finds that this factor weighs in favor of transfer.

### c) The Familiarity of the Forum with the Law that Will Govern the Case

The Parties agree that this factor is "neutral" because it is "not at issue here." (Dkt. No. 3 at 10).

### d) The Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

The Parties agree that this factor is "neutral" because it is "not at issue here." (*Id.*)

### 3. *Collective Weighing of the Factors*

The Fifth Circuit has been careful to emphasize that district courts should not merely engage in a "raw counting" exercise which tallies up the factors favoring transfer and the factors disfavoring transfer. *In re Radmax*, 720 F.3d at 290 ("We do not suggest—nor has this court held— that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology."). Instead, the Court must make factual determinations to ascertain the actual gain in convenience, if any, that will result from transfer. *In re Genentech*, 566 F.3d at 1346. "The Supreme Court has long held that § 1404(a) requires 'individualized, case-by-case consideration of convenience and fairness.'" *Id.* (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "Where the present and proposed forums are both roughly similar in terms of convenience, courts should not conclude that the proposed transferee forum is 'clearly more convenient.'" *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-00118-JRG, 2019 WL 6344267, at *6 (E.D. Tex. Nov. 27, 2019) (citing *Volkswagen II*, 545 F.3d at 315). Similarly, courts should not transfer cases "where the only result is to shift the balance of inconveniences from the moving party to the non-moving party." *Mohamed*, 90 F. Supp. 2d at 775; *see also Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870 (E.D. Tex. 2012) (same); *Goodman Co. v. A & H Supply, Inc.*, 396 F. Supp. 2d 766, 776 (S.D. Tex. 2005) (same).

Having considered the foregoing factors, the Court concludes that Defendants have not shown that transfer to the Tyler Division will be "clearly more convenient." *See Volkswagen II*, 545 F.3d at 315. Defendants do not dispute, and the Court factually finds, that the Marshall Division is less costly than the Tyler Division in terms of travel time and travel cost for Hammers as well as both Defendants. Further, Hammers expressly ties the convenience of the party-witnesses to their impact at trial. Hammers alleges, for example, that "[t]he predominant source of proof in this matter will be the testimony of both the parties." (Dkt. No. 5 at 3). Given the absence of a response from Defendants on that issue, and Defendants' failure to describe specific advantages of the Tyler Division, the Court gives particular weight to the fact that the Marshall Division is comparably more convenient to the Parties in this case.

The factor which weighs in favor of transfer—localized interests—is insufficient to clearly overcome the facts which weigh against transfer, in light of the foregoing discussion. At most, the Marshall Division and the Tyler Division "are both roughly similar in terms of convenience," such that a transfer would not result in a trial setting that is "clearly more convenient." *Quest NetTech*, 2019 WL 6344267, at *6; *Volkswagen II*, 545 F.3d at 315. All other convenience factors—sources of proof, compulsory process, practical problems, court congestion, familiarity with applicable law, and conflict of laws issues—are neutral.

Accordingly, the Court finds that Defendants have failed to demonstrate that the Tyler Division is "clearly more convenient" than the Marshall Division.

## IV.    Conclusion

Venue is proper in this case under § 1391 and § 1406 because the Parties agree that the Eastern District of Texas is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *See* 28 U.S.C. § 1391. Defendants' attempt to import an

additional extratextual divisional venue requirement into § 1391 is improper, both because such requirement lacks any basis in the plain text of the statute, and because closely-related venue provisions demonstrate that Congress understood how to include a divisional venue requirement when it wished to do so.

Additionally, Defendants have failed to carry their burden to show that transfer to the Tyler Division would be "clearly more convenient" than conducting a trial in the Marshall Division. Defendants have largely failed to identify basic factual information which is necessary to evaluate the convenience of a transfer. However, the limited factual discussion in the briefing shows that, on balance, the Marshall Division is more convenient for the Parties than the Tyler Division.[11]

Accordingly, Defendants' Motion to Dismiss for Improper Venue or, in the Alternative, Motion to Transfer Venue (Dkt. No. 3) is hereby **DENIED**.

**So ORDERED and SIGNED this 10th day of December, 2019.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[11] The Court observes that when a moving defendant seeks transfer based on convenience of the parties, and then leaves the Court in the dark, largely to guess as to the key facts and circumstances upon which convenience turns, that defendant generally will lose and deservedly so.